UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

FRED L. MARCOU, JR.,        )
                            )
        Plaintiff           )
                            )
v.                          )        No. 2:16-cv-00527-JAW
                            )
NANCY A. BERRYHILL,         )
Acting Commissioner of Social Security, )
                            )
        Defendant           )

# REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found that the plaintiff had no severe mental impairment as of his date last insured for SSD benefits, June 30, 2011. The plaintiff seeks remand, arguing that the ALJ improperly substituted her lay opinion for the uncontroverted medical opinion of psychologist Jeffrey M. Wagner, Ph.D., failed to call a medical expert to infer onset date of disability pursuant to Social Security Ruling 83-20 ("SSR 83-20"), and erroneously concluded that his mental impairments did not meet the criteria of Listing 12.05, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"). *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 13) at 1-10. I agree that the ALJ's finding that the plaintiff had no severe mental impairment as of his date last insured, as well as her rejection

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

of Dr. Wagner's opinion insofar as it bore on Listing 12.05, are unsupported by substantial evidence and recommend that the court vacate the decision and remand this case, without reaching the plaintiff's alternative SSR 83-20 argument.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2011, Finding 1, Record at 14; that, as of his date last insured, he had medically determinable impairments of borderline intellectual functioning, a learning disorder, and alcohol abuse/dependence, none of which significantly limited his ability to perform basic work-related activities for 12 consecutive months, and, therefore, he did not have a severe impairment or combination of impairments, Findings 3-4, *id*. at 14-15; and that he, therefore, was not disabled at any time through June 30, 2011, his date last insured, Finding 5, *id*. at 20. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out

groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## I. Discussion

### A. Challenge to Step 2 Finding

The plaintiff first faults the ALJ for rejecting the "uncontradicted" June 8, 2015, opinion of Dr. Wagner and substituting her lay opinion for his. *See* Statement of Errors at 1-5. I agree that, in view of the addition of the Wagner opinion to the record, the ALJ's Step 2 finding is unsupported by substantial evidence.

#### 1. Background

The plaintiff, who dropped out of school in ninth grade, worked as an auto mechanic for many years. *See* Record at 388. On September 23, 2013, he filed applications for both SSD, or Title II, benefits and Supplemental Security Income ("SSI"), or Title XVI, benefits, *see id.* at 12 & n.1., alleging disability since January 1, 2010, "due to foot problems and trouble reading and

writing[,]" *id*. at 387.  "To be eligible to receive SSD benefits [a claimant] ha[s] to have been disabled on or before [his or] her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status." *Chute v. Apfel,* No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999).  Because the plaintiff's date last insured for SSD benefits was June 30, 2011, *see* Finding 1, Record at 14, he had to prove that he was disabled on or before that date to be entitled to SSD benefits.  Prior to his hearing before the ALJ, he amended his alleged onset date of disability to June 30, 2011, his date last insured for SSD benefits. *See id*. at 12.

The plaintiff was found entitled to SSI benefits on initial review of his application, and awarded such benefits retroactive to the date of his application, September 23, 2013.  *See id*. at 78-79.  Accordingly, his appeal before the ALJ solely concerned his eligibility for SSD benefits.  *See id*. at 12 & n.1.

The record before the ALJ contained the opinions of four experts bearing on the plaintiff's mental impairments.  Following an examination of the plaintiff on January 15, 2014, agency consultant Patricia Kolosowski, Ph.D., diagnosed him with alcohol dependence and an adjustment disorder with a depressed mood, noting that he stated that he could not read and write and that, on mental status examination, he had been unable to read the sentence, "Close your eyes."  Record at 387-90.  Dr. Kolosowski expressed no opinion regarding the plaintiff's mental impairments as of his date last insured.  *See id*.

On initial review, on February 5, 2014, agency nonexamining consultant Lewis F. Lester, Ph.D., issued two opinions, one for the then-current period and one for the period as of the plaintiff's date last insured.  *See id*. at 70-71.  He found that, for the current period, the plaintiff had severe impairments of affective disorders, borderline intellectual functioning, and a learning

4

disorder that limited him, *inter alia*, to understanding and remembering simple tasks and procedures and interacting with co-workers and supervisors but not the public, but that for the period on or before his date last insured, there was insufficient evidence to assess his mental impairments, associated functional limitations, or residual functional capacity ("RFC"). *See id*. at 70-71, 75-76.

On reconsideration of the SSD denial, a second agency nonexamining consultant, Brian Stahl, Ph.D., issued an opinion dated July 16, 2014, concurring that there was insufficient evidence to assess the plaintiff's mental impairments, associated functional limitations, or RFC as of his date last insured. *See id*. at 89.

Shortly before his July 9, 2015, hearing before the ALJ, *see id*. at 26, the plaintiff submitted an IQ Testing and Functional Capability Evaluation by Dr. Wagner dated June 8, 2015, and Dr. Wagner's responses to a Mental Impairment Questionnaire dated June 26, 2015. *See id*. at 849-64.

Dr. Wagner administered several tests to the plaintiff – the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), Beck Depression Inventory, and Pain Disability Index – and reviewed his medical and academic records. *See id*. at 849. He diagnosed him with an intellectual disability in the mild-moderate range, predicated on a full-scale IQ score of 54, major depression, somatic symptom disorder with predominant pain, and alcohol use disorder, moderate, in early remission. *See id*. at 850, 857.

He stated that the results of the plaintiff's IQ test were "consistent with [his] difficulty with literacy, ability to deal with the intellectual demands of a school environment, or jobs where verbal/abstract reasoning or verbal problem solving were expected" as well as with his work history and reported inability to read. *Id*. at 851. He characterized intellectual disability as a

5

lifelong neurodevelopmental disorder with onset "during the early developmental period[.]" *Id*. at 852.

He concluded:

> [The plaintiff] had been able to sustain gainful employment in spite of his intellectual limitations, as long as he had a cooperative employment situation and he was devoid of the chronic pain resulting from physical injuries. When he was unable to perform his duties based on chronic pain, depression worsened, and he developed a chronic pain syndrome (pain, physical limitations, depressed mood) that both disrupted his daily activities and resulted in the accommodation to his symptoms (lack of reliability, consistency, sustainability) that is seen in the description of his daily activities.
>
> Based on the confluence of intellectual disability, chronic pain (Somatic Symptom Disorder), and Major Depression, [the plaintiff] is unable to gain or sustain gainful employment. His Alcohol Use Disorder is in Early Remission, but significant alteration and reduction in alcohol use has not improved his productive capacity.

*Id*. at 856-57.

The ALJ deemed the Wagner opinion "not entitled to significant probative weight." *See id*. at 19. First, she explained why, in her view, despite Dr. Wagner's findings indicating otherwise, the plaintiff had no condition meeting the criteria of Listing 12.05, as well as other potentially applicable Listings, as of his date last insured. *See id*. at 18-19. Second, she stated:

> These assessments by Dr. Wagner have been made on the basis of a single interview and testing session arranged by the [plaintiff's] representative in order to obtain Title II benefits. Dr. Wagner is not a medical doctor and his assessment of pain, which plays an integral part in his opinion as to the [plaintiff's] functional limitations, is based solely on the [plaintiff's] subjective reporting and a review of unspecified medical records. Indeed, there is no evidence in the record of the [plaintiff] experiencing substantial pain proximate to or on the amended alleged onset date/date last insured. Moreover, these assessments by Dr. Wagner are not supported by the two mental status examinations of record, the [plaintiff's] sparse treatment history, his work history, or his activities of daily living as discussed above.

*Id*. at 19.

The ALJ gave the opinions of Drs. Lester and Stahl that there was insufficient evidence to assess the plaintiff's mental impairments on or before his date last insured "significant probative

6

weight[,]" deeming them supported by and consistent with the record as a whole. *Id*. However, she stated that, "[g]iving the [plaintiff] the benefit of the doubt, and recognizing his history of alcohol abuse and reading and writing deficits," she found that he had medically determinable impairments of borderline intellectual functioning, a learning disorder, and substance abuse as of his date last insured. *Id*. at 19 n.2.

### 2. Analysis

As the plaintiff notes, *see* Statement of Errors at 4, the sole assessment of his IQ of record is that of Dr. Wagner. On its face, the intellectual disability impairment diagnosed by Dr. Wagner based on IQ testing seemingly qualifies as "severe" for purposes of the *de minimis* Step 2 showing. *See* Record at 856 (opinion of Dr. Wagner that, based on the plaintiff's intellectual disability alone, he "would most likely be unable to compete in a current car mechanic shop").[2] Yet, after giving the Wagner opinion little probative weight and those of Drs. Lester and Stahl significant probative weight, the ALJ found that the plaintiff had failed to demonstrate that he had a severe mental impairment as of his date last insured. *See id*. at 19.

The commissioner argues that, rather than substituting her lay opinion for expert opinion, the ALJ properly resolved conflicts in the evidence, relying on the opinions of Drs. Stahl and Lester that the plaintiff had failed to meet his burden of supplying sufficient evidence to assess the severity of his mental impairments as of his date last insured; finding, in reliance on the Lester opinion, that the plaintiff had borderline intellectual functioning rather than an intellectual disability implicating Listing 12.05; and impliedly rejecting the validity of the Wagner IQ score.

---

[2] Dr. Wagner explained, "Regarding his previous vocational experience, [the plaintiff] was able to maintain employment in a non-conceptual job when it was possible to 'work on cars' without being able to read or write, and without the more currently common sophisticated diagnostic procedures." Record at 856.

7

*See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 5-7 & n.6, 15-16. These arguments are not persuasive.

The ALJ's reliance on the opinions of Drs. Lester and Stahl that there was insufficient evidence to assess the plaintiff's mental impairments and associated functional capacities as of June 30, 2011, was misplaced: their opinions cannot stand as substantial evidence for that proposition because neither had the benefit of review of the Wagner report, which constituted material new evidence bearing on the plaintiff's impairments and functional capacity as of that time. *See Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.") (citations and internal quotation marks omitted).

For several reasons, Dr. Lester's opinion addressing the then-current period cannot fairly be construed as a conflicting expert opinion as to the plaintiff's state as of his date last insured, including whether his mental impairments met the criteria of Listing 12.05. *See* Opposition at 15-16. First, Dr. Lester did not purport to comment on the plaintiff's status as of his date last insured; indeed, he stated that he had insufficient evidence to assess it. *See* Record at 71. Second, even as to the then-current period, Dr. Lester did not consider whether the plaintiff's mental impairments met the criteria of Listing 12.05; rather he addressed only Listings 12.02, 12.04, and 12.09. *See id*. at 70-71. Third, Dr. Lester, like Dr. Stahl, did not have the benefit of review of material new evidence in the form of the Wagner report, which contained new IQ and other findings that put Listing 12.05 squarely into play. Fourth, and finally, the ALJ did not rely on Dr. Lester's current evaluation as a counterweight to Dr. Wagner's Listing 12.05 opinion. *See id*. at 18-19 & n.2. "Pursuant to the rule of *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), a reviewing court cannot

affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Day v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) (citations and internal punctuation omitted).

The commissioner's argument that the ALJ impliedly rejected the IQ score assessed by Dr. Wagner as invalid, *see* Opposition at 15, likewise is unavailing. First, the commissioner again relies on a *post hoc* rationalization. At no point in the ALJ's detailed discussion of the Wagner opinion did she address the validity of the assessed IQ score. *See* Record at 16-19.[3] Second, and in any event, the rejection of the sole IQ score of record would have been improper. The two cases from this court that the commissioner cites for the proposition that an ALJ need not accept IQ scores as valid are distinguishable in that both involved a conflict in expert opinion as to a claimant's IQ score. *See* Opposition at 14; *Libby*, 2011 WL 2940738, at *11-*12; *Plourde v. Barnhart*, No. 02-164-B-W, 2003 WL 22466176, at *2-*4 (D. Me. Oct. 31, 2003) (rec. dec., *aff'd* Nov. 18, 2003).

Indeed, in *Nieves v. Secretary of Health & Human Servs.*, 775 F.2d 12 (1st Cir. 1985), cited by the plaintiff, *see* Statement of Errors at 4, the First Circuit held that the Appeals Council had erred in discrediting a claimant's sole IQ score of record, stating that the commissioner "is simply not at liberty to substitute her own opinions of an individual's health for uncontroverted medical evidence[,]" *Nieves*, 775 F.2d at 14 (footnote omitted).

---

[3] "This court has held that "an IQ is presumed to remain stable over time in the absence of evidence to the contrary." *Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738, at *10 n.8 (D. Me. July 19, 2011) (rec. dec., *aff'd* Aug. 24, 2011), *aff'd*, 473 Fed. Appx. 8 (1st Cir. 2012) (citations and internal punctuation omitted). The commissioner proffers a *post hoc* rationalization in observing, in response to the plaintiff's argument that there was "no traumatic event which caused a drop in intelligence[,]" Statement of Errors at 2, that the plaintiff had a long history of heavy drinking and had been diagnosed with global atrophy of the brain, a condition that can be associated with heavy alcohol use, *see* Opposition at 7 n.6.

The ALJ, accordingly, erred in determining that the plaintiff had no severe mental impairment as of his date last insured.[4]

As the plaintiff recognizes, a claimant cannot obtain remand on the basis of a Step 2 error unless he or she "can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." Statement of Errors at 2 (quoting *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010)). The plaintiff does so in this case on the basis of his separate argument that the ALJ erred in determining that his mental impairment did not meet the criteria of Listing 12.05.

## B. Challenge to Listing 12.05 Conclusion

The plaintiff next contends that the ALJ's conclusion that he did not have a mental impairment meeting the criteria of Listing 12.05(B) is also unsupported by substantial evidence. *See* Statement of Errors at 5-10. I agree.

Prior to amendments effective January 17, 2017,[5] and for purposes of the plaintiff's claim, Listing 12.05(B) read as follows:

> 12.05 *Intellectual disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

---

[4] The pitfalls of the ALJ's lay interpretation are apparent in her explanation that, because Dr. Lester found on initial review that the plaintiff had severe mental impairments of an affective disorder, borderline intellectual functioning, a learning disorder, and substance abuse, she would give the plaintiff "the benefit of the doubt" in recognition of his history of alcohol abuse and reading and writing deficits and find that he had the same medically determinable – albeit nonsevere – impairments as of June 30, 2011. *See* Record at 19 n.2. As the commissioner acknowledges, *see* Opposition at 6-7 n.5, to the extent that the ALJ meant to indicate that Dr. Lester made such findings for the period as of the plaintiff's date last insured, she erred. In any event, in view of Dr. Wagner's IQ score findings, it is unclear how the adoption of the medically determinable impairments found by Dr. Lester without benefit of review of the Wagner report gave the plaintiff the "benefit of the doubt."

[5] The commissioner revised the Listings regulations regarding mental disorders effective January 17, 2017, to reflect, *inter alia*, "advances in medical knowledge." Revised Medical Criteria for Evaluating Mental Disorders "Revised Criteria"), 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016). As the plaintiff recognizes, *see* Statement of Errors at 5 n.3, the version of the Listing in effect as of the date of the ALJ's decision controls, *see, e.g.*, Revised Criteria, 81 Fed. Reg. at 66138 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

***

> B. A valid verbal, performance, or full scale IQ of 59 or less[.]

Listing 12.05(B).

While Dr. Wagner did not expressly discuss Listing 12.05, *see* Record at 849-64, the ALJ recognized that his findings, if adopted, would fulfill both the so-called "capsule definition requirement" that the plaintiff show deficits in adaptive functioning initially manifested during the developmental period and the requirement that he have a valid IQ score of 59 or less, *see id*. at 18. As noted above, the ALJ did not challenge the validity of the IQ score. However, she discussed in detail why, in her view, (i) the plaintiff had not shown "deficits in adaptive functioning initially manifested during the developmental period or for years afterward[,]" and (ii) "Dr. Wagner's efforts to extrapolate deficits to prior to age 22 [were] not supported by the record." *Id*.

Yet, as the plaintiff suggests, *see* Statement of Errors at 6, this entire exercise was fundamentally flawed because Dr. Wagner had supplied the only expert opinion of record bearing on whether his mental impairments met the requirements of Listing 12.05 as of June 30, 2011. The ALJ was not engaged in the permissible resolution of conflicts in the expert evidence as to whether the capsule definition requirement was met but, rather, the impermissible substitution of her lay judgment for that of the only expert to opine on the point. *See, e.g.*, *Libby*, 2011 WL 2940738, at *11 (distinguishing *Nieves* on basis that ALJ had "not substitute[d] her judgment for that of the experts" in determining that claimant had not met the adaptive functioning requirements of Listing 12.05 but, rather, had "resolved conflicts in the expert medical evidence" on that point); *Richardson v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00313-JAW, 2011 WL 3273140, at *8-*9 (D. Me. July 29, 2011) (rec. dec., *aff'd* Aug. 18, 2011) (remanding case in part because ALJ

determined, in absence of *any* relevant expert opinion, that claimant did not demonstrate adaptive functioning deficits required by Listing 12.05).[6]

To the extent that the commissioner argues, in the alternative, that the ALJ made a permissible commonsense determination regarding the plaintiff's claimed deficits in adaptive functioning, *see* Opposition at 8-9, the caselaw on which she relies is distinguishable in that it concerns commonsense judgments based in part on claimants' own statements as to the extent of their physical limitations, *see Kenney v. Colvin*, No. 2:13-cv-296-GZS, 2014 WL 3548986, at *5 (D. Me. July 17, 2014) (ALJ made permissible commonsense judgment that claimant could perform at least medium work based on her own statements and activities as well as relatively benign examination findings); *Dandreo v. Astrue*, Civil No. 09-347-P-H, 2010 WL 2076090, at *5-*6 (D. Me. May 20, 2010) (rec. dec., *aff'd* June 9, 2010) (ALJ made permissible commonsense judgment that claimant could not perform repetitive fine manipulation by crediting claimant's own hearing testimony that she had such a limitation).

Remand is warranted because the ALJ erred in finding no severe mental impairment as of the plaintiff's date last insured, a reversible error in view of her further improper rejection of the sole expert opinion of record, that of Dr. Wagner, addressing whether the plaintiff's mental impairments met the criteria of Listing 12.05(B). Accordingly, I need not reach the plaintiff's

---

[6] The commissioner cites *Coutu v. Colvin*, No. 1:13-cv-00317-JAW, 2014 WL 5454527, at *3 (D. Me. Oct. 27, 2014), for the proposition that an ALJ can give little weight to the retrospective opinion even of a treating source when the opinion is unsupported by any clinical observations and inconsistent with other evidence. *See* Opposition at 6-7. At oral argument, her counsel also cited *Rudge v. Astrue*, No. 1:11-cv-440-DBH, 2012 WL 5207591 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 22, 2012), for the proposition that the ALJ properly relied on the plaintiff's longtime performance of semiskilled work as an auto mechanic in finding that he did not demonstrate deficits in adaptive functioning initially manifested before age 22. *Coutu* is distinguishable in that it does not concern Listing 12.05 and, in any event, the ALJ chose to adopt an agency nonexamining consultant's opinion that the court determined, over the plaintiff's challenge, could stand as substantial evidence of the plaintiff's onset date of disability. *See Coutu*, 2014 WL 5454527, at *3-*4. *Rudge* is distinguishable in that the question presented was whether the claimant had demonstrated that the ALJ erred in failing to order a consultative mental examination to determine whether his mental impairments met the criteria of Listing 12.05. *See Rudge*, 2012 WL 5207591, at *2-*3. In that context, the court held that any error in failing to obtain IQ testing was harmless because evidence proffered by the claimant did not establish that he had the requisite deficits in adaptive functioning. *See id.*

alternative argument that the ALJ improperly failed to call a medical expert to infer the onset date of disability, under SSR 83-20.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of September, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge